IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| NORTHERN ILLINOIS GAS COMPANY d/b/a NICOR GAS COMPANY, | : : : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| vs. | : | 1:17-CV-5147-CC |
| | : | |
| USIC, LLC, | : | |
| | : | |
| Defendant. | : | |

## OPINION AND ORDER

On March 29, 2019, this Court heard from Plaintiff Northern Illinois Gas Company d/b/a Nicor Gas Company ("Nicor") and Defendant USIC, LLC ("USIC") regarding: (1) USIC's Motion for Summary Judgment [Doc. No. 35]; (2) Nicor's Motion for Partial Summary Judgment [Doc. No. 38; (3) Nicor's Motion for Hearing [Doc. No. 39]; (4) Nicor's Motion to Supplement the Record for Summary Judgment with Newly Discovered Evidence [Doc. No. 46]; and (5) USIC's Motion for Leave to File Surreply to Plaintiff's Motion to Supplement the Record for Summary Judgment [Doc. No. 53].  Since that hearing, USIC, LLC's Motion to Certify Closure of Case and Finality of Order Granting Summary Judgment [Doc. No. 68] and Plaintiff's Request for Oral Argument or, in the Alternative, Motion for Leave to File Sur-Reply [Doc. No. 72] have been filed.

Having read and considered USIC, LLC's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment; and the Court having read and considered all briefs and materials submitted by the parties in connection therewith, including those that have been filed following the conclusion of the hearing;and the Court having closely read and considered the statutory authority in cases relied upon by the parties; and the Court having heard the parties' oral arguments, the Court hereby grants USIC, LLC's Motion for Summary Judgment and denies as moot Plaintiff's Motion for Partial Summary Judgment.  To further explain the Court's rulings and the reasoning underlying the Court's rulings, the Court sets forth the following undisputed facts and conclusions of law:

## I.      Undisputed Facts

### Parties, Jurisdiction, and Venue

1.      Plaintiff Northern Illinois Gas Company, d/b/a Nicor Gas Company ("Nicor") is an Illinois corporation that owns and operates a natural gas distribution system.  (Doc. No. 37 ¶ 2.)

2.      Defendant USIC, LLC ("USIC") is a Delaware limited liability company with its principal place of business in Indiana.  USIC provides utility line locating services primarily through its subsidiary USIC Locating Services, LLC.  USIC's sole member is USIC Holdings, Inc., a Delaware corporation with its principal place of business in Indiana.  (Doc. No. 34 at ¶ 2.)

3.     This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because Nicor and USIC are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.     Venue is proper in this Court based on the parties' forum-selection clause in the contract at issue. See Atlantic Marine Constr. Co. v. United States Dist. Ct. for the W. Dist. of Tex., 571 U.S. 49, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013).  Neither party has challenged the appropriateness of venue in this Court.

**The Master Locating Services Agreement and USIC's Locating Work**

5.     In 2014, Nicor and USIC entered into a Master Locating Services Agreement ("the Agreement") for the period January 1, 2014 to January 1, 2018. (Doc. No. 33-1.)

6.     As part of the Agreement, USIC agreed to perform locating services on behalf of Nicor pursuant to locate requests made by excavators and received by the One Call Center within a designated territory, including Romeoville, Illinois. (Doc. No. 33-1 at ¶ 3.1.)

7.     The process by which excavators make requests to a One Call Center is commonly known as "811 Call Before You Dig."  The One Call Center used in Illinois where the subject of the underlying incident is in Romeoville, Illinois, is called JULIE.  (Doc. No. 35-1 at ¶ 12.)

8.     The Agreement defines "Excavation" as: "Any operation by which the level or grade of land is changed or earth, rock, or other material below existing

3

grade is moved and includes, without limitation, grading, trenching, digging, ditching, auguring, scraping, directional boring, and driving." (Doc. No. 33-1 at ¶ 2.12.)

9.      The Agreement defines "Locate Request" as: "A request to Locate received from the states [sic] One-Call Center no later than the time that is the required number of hours designated by the State's Underground Utility Damage Prevention laws before Excavation begins, but not more than the required calendar days for which the Locate Request Ticket is valid under State law before the commencement of Excavation." (Doc. No. 33-1 at ¶ 2.25.)

10.     In response to an excavator's locate request, USIC goes to the excavation site identified by the excavator and locates and marks the approximate location of certain Nicor facilities that may be in conflict with the excavator's proposed excavation.[1] (Doc. No. 35-1 at ¶ 13; Doc. No. 33-1 at ¶ 3.7.2.)

11.     The Agreement requires USIC to "use best efforts to protect [Nicor's] assets including but not limited to: Utility Facility and such other [Nicor] property from damage while performing the Services herein." (Doc. No. 33-1 at ¶ 3.9.1.)

12.     The Agreement defines "Utility Facility(ies)" as: "An underground or submerged conductor, pipe, or structure used in providing electric or

---

[1] In response to this asserted fact, NICOR admitted only "that pursuant to the Agreement, USIC is obligated to perform locate services on behalf of NICOR." (Doc. No. 37 at ¶ 20.) However, NICOR did not cite any evidence in its response to this fact. Therefore, pursuant to this Court's Local Rules, the Court deems the entire paragraph admitted. See LR 56.1(B)(2)(a)(2).

communications service, or an underground or submerged pipe used in carrying, providing, or gathering gas, oil or oil products, sewage, waste water, storm drainage, water or other liquids, and appurtenances thereto." (Doc. No. 33-1 at ¶ 2.42.)

13.    The Agreement defines "Locate" as: "Identifying the location of and Marking a Utility Facility with Reasonable Accuracy by using devices designed to respond to the presence of the Utility Facility or underground plant." (Doc. No. 33-1 at ¶ 2.24.)

14.    The Agreement defines "Marking" as: "The use of stakes, flags, paint stripes placed at the excavation site . . . indicating to the excavator the presence of underground utility facilities in the proposed area of excavation." (Doc. No. 33-1 at ¶ 2.28.)

15.    To carry out the locating process, the Agreement requires USIC locators to "visit the Excavation Site . . . Locate Company's Facilities using industry standard Locate equipment . . . and other means as necessary including, but not limited to: potholing and/or exposing Company Facility when necessary." (Doc. No. 33-1 at ¶ 3.7.2.)

16.    The Agreement requires Nicor to "provide updates to its mobile mapping system and electronic Service Card Records, as available, which indicates the approximate location of [Nicor's] Facilities in the areas where [USIC] is

performing the Services."[2]  (Doc. No. 33-1 at ¶ 6.1.)

17.     The Agreement requires all USIC locators to "carry a measuring wheel, shovel, post hole diggers, probe rod, curb box locator, voltage indicator, wirebrush and file for grounding, and an industry accepted piece of locating equipment at all times."  (Doc. No. 33-1 at ¶ 3.3.5.)

18.     USIC locators also utilize personal protective equipment including cones, safety vests, boots, and a hard hat.  (Doc. No. 35-1 at ¶ 14.)

19.     After a locate request is made, notification is given to the excavator that certain facilities are or are not present in the area identified in the excavator's locate request.  This notification is known as a "positive response."  (Doc. No. 35-1 at ¶ 16.)

20.     USIC communicates with the excavator regarding its intended excavation to coordinate the excavation schedule, ensure the protection of Nicor's facilities, and to help prevent risk of injury to persons or property.  (Doc. No. 35-1 at ¶ 17; Doc. No. 33-1 at ¶ 3.10.6.)

**The Underlying Cases**

21.     Michael J. Smith, as Temporary Guardian of Thomas Smith, filed a negligence action in the Circuit Court of Will County, State of Illinois, against

---

[2] In response to this asserted fact, NICOR stated that "NICOR does not dispute that it is supposed to provide USIC with aforementioned updates."  (Doc. No. 37 at ¶ 22.)  NICOR's objection to the inclusion of this fact as an undisputed fact is overruled.

Metro Fibernet, LLC ("Metronet"), ACO Cable Construction, Inc. ("ACO Cable"), and USIC Locating Services, LLC ("USIC Locating Services"), for personal injuries suffered from a gas explosion that occurred near 91 Strawflower Court in the Wespark subdivision of Romeoville, Illinois ("the Smith case"). That action is styled as <u>Michael J. Smith, et al. v. Metro Fibernet, LLC, et al.</u>, Case No. 2017L000121. (<u>See</u> Doc. No. 35-2 (Smith First Amended Complaint).)

22.    The Smith First Amended Complaint alleges that sometime prior to October 11, 2016, Metronet contracted with ACO Cable to perform directional boring to install fiber optic cable in the Wespark subdivision. (Smith First Amended Complaint at ¶ 4.)

23.    As further alleged in the Smith First Amended Complaint, in the course of its directional boring on October 11, ACO Cable struck a Nicor gas line, causing an explosion from which Thomas Smith, an employee of Nicor at the time, alleges that he suffered catastrophic injuries. (Smith First Amended Complaint at ¶ 9.)

24.    A different explosion had occurred in the same location in 1999. Nicor was sued in the DuPage County Circuit Court, along with other defendants, for injuries alleged to have been caused by the explosion in 1999. (See <u>Randich v. N. Ill. Gas Co.</u>, No. 01 L 332, 2001 WL 36216007 (Ill. Cir. Ct. Oct. 16, 2001), aff'd <u>Randich v. Pirtano Constr. Co.</u>, 804 N.E.2d 581 (Ill. App. Ct. 2003).)

25.     In the Smith case, Metronet, ACO Cable, and USIC Locating Services each filed third-party complaints against Nicor, seeking contribution from Nicor in the event either party is found to be liable for Smith's injuries.  (See Doc. Nos. 35-3, 35-4, 35-5; Order, No. 17L121, dated 10/30/18 (granting USIC Locating Services' Motion for Leave to File Third-Party Complaint against Nicor).)[3]

26.     According to pleadings in the Smith case, the plaintiff Smith is an employee of Nicor and has pursued a worker's compensation claim against Nicor for his injuries.  (See No. 17L121, Nicor's Affirmative Defenses to Third Party Complaint, filed 10/6/17.)

27.     On April 2, 2018, the Wespark Condominium Association, Nationwide Mutual Insurance Company, Allstate Insurance Company, and State Farm Fire & Casualty Insurance Company filed a lawsuit that is pending in the Will County Circuit Court of Illinois, styled as Wespark Condo. Ass'n a/k/a Wespark Freedom Condos., et al. v. Metro Fibernet, LLC, Case No. 18L302 (the "Wespark case").  (See Doc. No. 35-6 (Wespark Complaint).)

28.     The Plaintiffs in the Wespark case seek recovery in tort for property damage allegedly caused by the negligent acts and/or omissions of Metronet, ACO Cable, USIC Locating Services, and Nicor. (Wesparl Complaint at ¶ 36.)

---

[3] This Court may take judicial notice of state-court records, including records in theCircuit Court of Will County, Illinois. See, e.g., Wells Fargo Bank, NA v. Dabney, No. 1:15-cv-3714-WSD, 1:15-CV-3714-WSD, 2016 WL 1601206, at *1 n.3 (N.D.Ga. Apr. 20, 2016).

29.     Nicor is a named defendant in the Wespark case, and USIC Locating
Services has filed a crossclaim against Nicor in the Wespark case.  (See Doc. No.
35-7; Order, No. 18L302, dated 10/30/18 (Order granting USIC Locating
Services' Motion for Leave to File Crossclaim).)

### This Lawsuit

30.     Nicor filed this lawsuit against USIC and asserted three claims: (1)
breach of contract; (2) declaratory judgment, and (3) attorneys' fees and costs under
O.C.G.A. § 13-6-11; Doc. No. 33 at ¶¶ 35–45.)

31.     Each of Nicor's claims against USIC relates to the question whether,
in Declining to indemnify and defend Nicor against the claims asserted against it in the
Smith Case and the Wespark case (collectively referred to herein as "the underlying
cases"), USIC violated its contractual duties as set forth in Paragraph 9.1 of the
Agreement.  (Id.)

32.     Paragraph 9.1 of the Agreement states:

To the fullest extent permitted by law, the Contractor [USIC] shall defend,
indemnify, and hold harmless the Company [Nicor], its affiliates, successors and
assigns, and its employees, against any and all manner of losses, costs, expenses,
damages, and fines or penalties, including, without limitation, reasonable
attorneys' fees, which the Company, its affiliates, successors and assigns, and its
employees, suffer or incur as a result of any claim, demand, suit, action, cause of
action, investigation, levy, fine, penalty or judgment made or obtained by any
individual, person, firm, corporation, Contractor employee, contractor,
governmental agency, or other person or entity in connection with, arising from,
or in any manner related to any actual or alleged act or omission of any one or
more of the following:

(a) Contractor and any subcontractor of Contractor, and any officers, directors, agents, representatives or employees of Contractor or of any such subcontractor in any manner arising from, connected with, or related to any Services performed or contracted to be performed pursuant to this Agreement; and

(b) The Company, its successors and assigns, and its officers, directors, agents, are liable for any reason because of any such act or omission ofthe Contractor or any subcontractor of the Contractor, or any officers, directors, agents, representatives or employees of any of them, whether or not such officers, directors, agents, representatives or employees are claimed to be agents or employees of the Company.

Provided, however, that the Contractor shall not be responsible to indemnify or hold harmless the Company for losses or damages caused by the sole negligence of the Company, its agents or employees.

(Doc. No. 33-1 ¶ 9.1.)

33.     The Agreement is governed by Georgia law.  (Doc. No. 33-1 at ¶ 19.)

34.     Paragraph 8.1 of the Agreement states:

Unless otherwise agreed to in writing, [USIC] will, at its own expense, carry and maintain during this Agreement the insurance coverage (with companies satisfactory to [Nicor]) in amounts no less than what is specified on Exhibit C attached hereto and incorporated herein. All insurance policies or bonds required by this Agreement will be issued by insurance companies licensed to do business within the State of Georgia and any other state in which the Services are to be performed with an A.M. Best Rating of not less than "A-VII." [USIC] will also be responsible for ensuring that its subcontractors comply with the insurance requirements of this Section.

(Doc. No. 33-1 at ¶ 8.1.)

35.     In 2016, the relevant time period for purposes of the explosion at issue, USIC held a General Liability commercial insurance policy through Zurich American Insurance Company, Policy Number GLO 9441413-01.  (See Doc. No.

42-3.)    That  policy  names  Locate  Holdings,  Inc.  (USIC's  indirect  parent company)  as  the  named  insured,  while  the  Certificate  of  Insurance  confirms  that USIC  itself  is  included  as  a  policyholder.  (Doc.  No.  42-3 at 14;  Doc.  No.  42-4 (Nicor Certificate of Insurance dated 12/14/2015).)

36.    The  General  Liability  policy  includes  as  an  additional  insured  "any person  or  organization  whom  you  are  required  to  add  as  an  additional  insured  on this  policy  under  a  written  contract  or  written  agreement."  (Doc.  No.  42-3 at 14.) The  policy  goes  on  to  explain  that  an  additional  insured  entity  is  covered  "only with  respect  to  liability  for  [covered  types  of  damage]  caused  in  whole  or  in  part, by: 1. Your  acts  or  omissions;  or  2. The  acts  or  omissions  of  those  acting  on  your behalf."  (Doc.  No.  42-3 at 14.)   Finally,  the  policy  explicitly  defines  the  words "you"  and  "your"  as  being  limited  to  the  named  insured.   (Doc.  No.  42-3 at 21) ("Throughout  this  policy,  the  words  'you'  and  'your'  refer  to  the  Named  Insured shown  in  the  Declarations.").

37.    The  policy  also  provides  that  USIC  has  a  $2 million  "self-insured retention"  or  deductible  for  each  occurrence  covered  by  the  policy.   (Doc.  No. 42-4; Doc. No. 33-6; Doc. No. 53-1.)

38.    Nicor's  coverage  limit  under  the  policy  is  $1 million.  (Doc.  No.  42-3 at 16; Doc. No. 33-1 at ¶ 8.1, Exhibit C; Doc. No. 53-1.)

39.    The  Agreement  provides  that  USIC's  insurance  policy  must  be  "with

companies satisfactory to [Nicor]."  (Doc. No. 33-1 at ¶ 8-1.)

40.     After the explosion in Romeoville, Nicor issued a tender letter to USIC and Zurich American Insurance Company, seeking indemnification and defense of Nicor related to the claims in the underlying cases.  (Doc. No. 33-5.)

41.     USIC declined to accept Nicor's tender of defense and indemnification.  (Doc. No. 33-6.)

42.     Zurich American Insurance Company, in a separate response, acknowledged that Nicor is an additional insured under the policy but explicitly reserved its rights "with respect to coverage for Nicor to the extent that any bodily injury or property damage was not caused, in whole or in part, by the acts or omissions of USIC or the acts or omissions of those acting on behalf of USIC in the performance of their work under the Master Locating Services Agreement between AGL Services Company and USIC."  (Doc. No. 53-1.)

## II.    Conclusions of Law

### Legal Standard

"Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial."  Taylor v. Texaco, Inc., 510 F. Supp. 2d 1255, 1260 (N.D. Ga. 2007) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322,

106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)) (emphasis in original).  In such a case, "there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

The moving party bears the initial burden to "demonstrate that there is no genuine issue as to any material fact and that summary judgment is appropriate." Philadelphia Indem Ins. Co. v. Manitou Constr., Inc., 115 F. Supp. 3d 1378, 1382 (N.D. Ga. 2015).  Once the movant's burden has been met, the burden shifts to the non-movant to demonstrate that there is a genuine issue of material fact that precludes summary judgment. Id.  "An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is 'merely colorable' or is not significantly probative.'" Taylor, 510 F. Supp. 2d at 1261 (citing Anderson v. Liberty Lobby, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). To survive a motion for summary judgment, a non-movant "must come forward with specific evidence for *every* element material to that party's case." Id. (emphasis in original).

### Analysis

This case arises out of Nicor's request for indemnification and defense from USIC in relation to two lawsuits in Illinois stemming from a gas explosion that caused personal injury and property damage.  The parties disagree about the

precise circumstances leading up to the striking of Nicor's gas line and who bears responsibility for the resulting damages, but those facts are not relevant to the resolution of USIC's Motion.

In its Motion for Summary Judgment, USIC seeks dismissal of all Nicor's claims on the ground that Georgia law renders Paragraph 9.1 of the Agreement unenforceable. See O.C.G.A. § 13-8-2(b); Doc. No. 35-8 at 1. As amended in 2011, O.C.G.A. § 13-8-2(b) provides, in relevant part, the following:

> A covenant, promise, agreement, or understanding in or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances, including moving, demolition, and excavating connected therewith, purporting to require that one party tosuch contract or agreement shall indemnify, hold harmless, insure, or defend the other party to the contract or other named indemnitee, including its, his, or her officers, agents, or employees, against liability or claims for damages, losses, or expenses, including attorney fees, arising out of bodily injury to persons, death, or damage to property caused by or resulting from the sole negligence of the indemnitee, or its, his, or her officers, agents, or employees, is against public policy and void and unenforceable.

O.C.G.A. § 13-8-2(b).[4]

"[T]o fall within the ambit of the statute, an indemnification provision must (1) relate in some way to a contract for 'construction, alteration, repair, or maintenance' of certain property and (2) promise to indemnify [or defend] a party for damages arising from that own party's sole negligence." Kennedy Dev. Co. v. Camp, 290

---

[4] The 2011 version of § 13-8-2(b) applies to this lawsuit because it was the version in effect when the parties entered into the Agreement in 2014. See Milliken & Co. v. Georgia Power Co., 344 Ga. App. 560, 563, 811 S.E.2d 58, 61 n.1 (2018) ("Contracts are construed under the law in effect at the time the contract was made."). Nonetheless, the current version of the statute, as amended in 2016, does not differ in any material way from the 2011 version as regards to subsection (b).

Ga. 257, 259, 719 S.E.2d 442 (2011).[5]  The Court concludes that Paragraph 9.1 of the Agreement meets both threshold conditions of O.C.G.A. § 13-8-2(b), and therefore it is void and unenforceable for being contrary to public policy as established by the Georgia General Assembly.  Accordingly, USIC has no duty to defend or indemnify Nicor under this Agreement and this Court hereby grants summary judgment in favor of USIC on all counts.

The Agreement is sufficiently related to "construction, alteration, repair, or maintenance of a building structure, appurtenances, or appliances, . . . including . . . excavating connected therewith" to satisfy the first threshold condition.  Regarding this condition, "Georgia courts have consistently construed this statute more broadly than courts in other jurisdictions have construed analogous statutes." Kennedy Dev. Co., 290 Ga. at 259.  Here, several indications in the language of the Agreement itself as well as the context in which the Agreement arises establish this connection.

The work that USIC performs under the Agreement is inextricably intertwined with excavation.  It begins with a locate request from an excavator and requires USIC to visit the site of the excavation, locate and mark any Nicor underground facilities, and communicate with the excavator about the presence or absence of a facility in the area.  Supra, Findings of Fact ("FOF") ¶¶ 10-15, 19.  Furthermore, the

---

[5] The version of the statute applied in Kennedy predates the addition of the words "or defend" in § 13-8-2(b), which were added in 2007.  See Kennedy, 290 Ga. at 260 n.2.

utility locating services provided by USIC are not only related to the excavation process but legally mandated whenever excavation is about to occur. Georgia, like all states, requires any person to submit a locate request to the Utilities Protection Center ("UPC") prior to commencing excavation. O.C.G.A. § 25-9-6. After a locate request is received, the facility owner or operator, which in this case is Nicor, is required to designate "through stakes, flags, permanent markers, or other marks . . . the location of utility facilities" within the area on which the excavation is to occur. O.C.G.A. § 25-9-7(a)(1). In this case, Nicor contracted with USIC to provide the requisite locating services set forth in O.C.G.A. § 25-9-7(a)(1).[6] In sum, because the line locating and marking services provided by USIC are a prerequisite to a person commencing exaction and an inextricable part of the excavation process itself, the Agreement that governs such services is "relative to" "excavating" and therefore falls within the scope of O.C.G.A. § 13-8-2(b).

In addition to the Agreement's essential connection with excavation, the Court concludes that the Agreement relates in other ways to the "repair or maintenance of a building structure, appurtenances, [or] appliances." While "Georgia courts have not defined precisely the terms 'building structures, appurtenances or appliances,' the courts have applied the definition liberally." Fed. Paper Bd. Co., Inc. v. Harbert-Yeargin, Inc., 53 F. Supp. 2d 1361, 1370 (N.D. Ga. 1999). In Federal

---

[6] Illinois has virtually identical legal requirements for excavation, as stated in the Illinois Underground Utility Facilities Damage Prevention Act, 220 ILCS 50/1 et seq.

Paper Board Co., for example, the court applied the statute to a contract to repair paper machines in an existing paper mill, ruling that the paper machines counted as either appurtenances or appliances.  In Milliken & Co. v. Georgia Power Co., 306 Ga. 6, 9, 829 S.E.2d 111 (2019), the Supreme Court found that an easement provision between a landowner and a power company that permitted the power company to construct a transmission pole and other related structures to provide electricity to a plan operating on the landowner's property "relate[d] 'to the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances, including moving, demolition, and excavating connected therewith.'"  Id. at 9-10 (citations omitted).  The Supreme Court reiterated that "Georgia courts have 'consistently construed' O.C.G.A. § 13-8-2(b) 'broadly'."  Id. at 10.

Nicor's gas lines, which connect to and provide gas transmission between buildings, qualify as either "appurtenances" or "appliances" under O.C.G.A. § 13-8-2(b).  Even the Agreement's definition of "Utility Facilities" establishes them as appurtenances or as "structures" that have their own appurtenances.  Either way, it lends further support for bringing Nicor's gas facilities within one of the categories described in O.C.G.A. § 13-8-2(b).  Cf. Fed. Paper Bd. Co., 53 F. Supp. 2d at 1370 (declaring paper machines at a paper mill to be either appurtenances or appliances under § 13-8-2(b)).

Moreover, USIC's locating work satisfies the statutory category of "maintenance" because its purpose is to protect the integrity of Nicor's gas facilities and prevent the structural damage and disruption of service.  The Agreement requires USIC to "use best efforts to protect [Nicor's] assets including but not limited to:  Utility Facility and such other [Nicor] property from damage while performing the Services herein."  FOF ¶ 11.  See Black's Law Dictionary (10th ed. 2014) at 1097 (defining "maintenance" to include "[t]he care and work put into property to keep it operating and productive").  By comparison, the Georgia Court of Appeals found that a commercial lease agreement satisfied O.C.G.A. § 13-8-2(b)'s category of "maintenance" because it required the leaseholder to "take good care of the Premises and fixtures."  See Borg-Warner Ins. Fin. Corp. v. Exec. Park Ventures, 198 Ga. App. 70, 71, 400 S.E.2d 340 (1991).  In addition, the services under the Agreement also relate to construction and repair of appurtenances.  USIC was at the site of excavation in Romeoville originally to assist the excavator in installing fiber optic cable to the homes in the subdivision.   FOF  ¶ 22.  Additionally, because the Agreement requires USIC to respond to "each Locate Request received," USIC's work includes locates performed in conjunction with the repair of any damaged underground appurtenances.  (Doc. No. 33-1 ¶ 3.7.)

In its briefing, Nicor argued that the Agreement does not fall within § 13-8-2(b) because the statute covers only contracts related to "maintenance or

construction of a building."  The Court agrees with USIC that this overly restrictive interpretation is contradicted by both the language of the statute itself and the cases applying it.   Nicor does not account for the fact that the statute refers to "construction, alteration, repair, or maintenance of a building structure, appurtenances, or appliances."  Nicor's argument also conflicts with the Georgia Supreme Court's statement that "Georgia courts have consistently construed this statute more broadly than courts in other jurisdictions have construed analogous statutes," Kennedy Dev. Co., 290 Ga. at 259, including applying it "to commercial and residential lease agreements bearing little or no relationship to any ostensible building construction."  Id. at 444-45; see also Fed. Paper Bd. Co., 53 F. Supp. 2d at 1370 (applying statute to contract for maintenance of paper machines not classified as buildings); Watson v. Union Camp Corp., 861 F. Supp. 1086, 1091 (ruling that contract for installation of vent collection system "clearly pertains to appurtenances and appliances connected with a building, if not to a building itself").  These other cases applied § 13-8-2(b) in circumstances far more tenuous than the Agreement here, which falls squarely within the language of the statute.

While the statute is not limited to contacts governing the construction of buildings, one Georgia court has explained that "it would seem that construction contracts were singled out [by the legislature] because of the possibility of hidden, or latent, defects of an extremely dangerous nature and not ordinarily detectable by

a lay person." See Federated Dep't Stores, 264 Ga. App. at 861 n.7 (internal quotation omitted).  The circumstances presented in this case fit well within the purpose of the statute, given that underground gas lines present hidden dangers of an extremely hazardous nature.  For this very reason, the Georgia General Assembly (as well as the Illinois legislature) requires excavators to submit locate requests before performing excavation and requires utility owners to locate and mark their lines.  The Court is persuaded by USIC's argument that preventing a gas company from shifting liability to a contractor for a latent danger for which the gas company was solely responsible and having the potential to cause catastrophic damage to persons and property would fall within the precise situation the legislature intended to cover under the statute.

Having satisfied the first threshold condition set forth in § 13-8-2(b), the question turns to whether the Agreement requires USIC to indemnify or defend Nicor for liability arising out of Nicor's sole negligence.[7]  Paragraph 9.1 requires USIC to indemnify, hold harmless, and defend Nicor "against any and all manner of losses, costs, expenses, damages, and fines or penalties . . . as a result of any claim, demand, suit, action, cause of action . . . in connection with, arising from, or in any manner related to any actual or alleged act or omission" of USIC or of Nicor to the extent it is claimed to be liable because of the acts or omissions of USIC.  (Doc. No.

---

[7] To reiterate, this question is independent of whether Nicor ultimately is deemed solely negligent in the underlying cases at issue, and therefore the Court expresses no opinion on Nicor's potential liability in the Illinois court proceedings.

33-1 at ¶ 9.1.)  The paragraph also contains an exculpatory clause stating that USIC "shall not be responsible to indemnify or hold harmless [Nicor] for losses or damages caused by the sole negligence of [Nicor], its agents or employees."  Id.

At the outset of this litigation, before briefing on the cross-motions for summary judgment began, USIC argued that the exculpatory clause covered both the duty to defend and the duty to indemnify and that, similar to the duty to indemnify, the Court could not resolve whether USIC owes a duty to defend Nicor without resolving the question whether Nicor could be held solely negligent for the damages in the underlying case.  (See Doc. No. 9-1 (USIC Suggestions in Support of Motion to Stay).)  In opposition to the Motion to Stay, Nicor disputed USIC's interpretation of the Agreement by arguing that USIC's duty to defend Nicor in Paragraph 9.1 "is not subject to any exception."  (See Doc. No. 14 at 2, 3, 6.)  Nicor successfully avoided a stay of all proceedings, as the Court denied USIC's Motion to Stay without prejudice and set a schedule for further briefing concerning application of § 13-8-2(b).  (Doc. No. 32 at 2.)

Following Nicor's briefing on the Motion to Stay, USIC argued that Nicor's own clearly stated position on the scope of the duty to defend in Paragraph 9.1 brought it within § 13-8-2(b)'s reach and thus rendered it void.  (Doc. No. 35-8 at 20-21.)  In response, Nicor attempted to shift its position away from its earlier broad interpretation of the duty to defend, claiming that USIC would not be

responsible for indemnifying or defending Nicor's sole negligence.  (See, e.g., Doc. No. 38-3 at 13-14.)

For two reasons, the Court declines to accept Nicor's shift in position.  First, in opposing the Motion to Stay, Nicor explicitly stated that the duty to defend was not subject to any exception, including a sole negligence exception.  Second, even if the Court were to allow Nicor to rely on a different interpretation of the duty to defend at the summary judgment stage, the Court rejects Nicor's reasoning for its latter position.  Nothing in the language of Paragraph 9.1 limits the scope of the duty to defend (or the duty to indemnify) to the acts or omissions of USIC alone.  See Doc. No. 33-1 at ¶ 9.1 (extending the duty to defend and indemnify to all claims "in connection with, arising from, or in any manner related to any actual *or alleged* act or omission" of USIC) (emphasis added).   Furthermore, if Nicor's latter interpretation were correct, the exculpatory clause at the end of Paragraph 9.1 would be superfluous because there would be no need to state that USIC is not responsible to "indemnify or hold harmless" Nicor for damages caused by Nicor's sole negligence.  Such a result is heavily disfavored in Georgia law.  "A contract must be considered as a whole with its provisions to be given effect and interpreted so as to harmonize with each other, and any construction that renders portions of the contract language meaningless is to be avoided.  Archer W. Contractors, Ltd. v.

Estate of Pitts, 292 Ga. 219, 233, 735 S.E.2d 772 (2012).[8]

Moreover, from a practical perspective, even the recent interpretation by Nicor renders the duty to defend broad enough to cover Nicor's sole negligence because Nicor still seeks (through its Motion for Partial Summary Judgment) an order declaring that USIC's duty to defend is effective immediately, regardless of the outcome of the underlying cases. (See Doc. No. 43 at 1-4.) The Agreement has no provision relating to refund of defense costs back to USIC in the event Nicor were to be found solely negligent, nor has Nicor advocated such an interpretation.

Furthermore, Nicor argued that USIC would have to pay Nicor to defend against allegations relating to Nicor's own conduct because Nicor's own conduct was "at least *related*" to "an actual *or alleged* act or omission of USIC." (See Doc. No. 51 at 6 n.3 (emphasis in original).) Thus, regardless of the variety of Nicor's proposed interpretations, they each bring the Agreement within the second threshold condition because they would require USIC to defend Nicor for liability arising from Nicor's sole negligence.

Nicor's only remaining argument against application of § 13-8-2(b) is that the "insurance exception" applies because Paragraph 8 of the Agreement requires USIC

---

[8] Even while attempting to narrow its interpretation of the duty to defend at summary judgment, Nicor continued to assert that the explicit carve-out for sole negligence in the exculpatory clause applies only to the duty to indemnify, not the duty to defend. (Doc. No. 38-3 at 14 n.6.) Therefore, Nicor cannot rely on the exculpatory clause as a basis to avoid application of § 13-8-2(b). "The construction placed upon a contract by the parties thereto . . . is entitled to much weight and may be conclusive upon them." Head v. Scanlin, 258 Ga. 212, 213, 367 S.E.2d 546 (1988) (quotation marks omitted).

to purchase insurance naming Nicor as an additional insured.   See Lanier at McEver, L.P. v. Planners & Eng'rs Collaborative, Inc., 284 Ga. 204, 207 n.2, 663 S.E.2d 240 (2008) ("Parties may avoid violating O.C.G.A. § 13-8-2(b) if their agreement also includes an insurance clause which shifts the risk of loss to an insurer, no matter who is at fault."); Federated Dep't Stores v. Superior Drywall & Acoustical, Inc., 264 Ga. App. 857, 861, 592 S.E.2d 485 (2003) (holding that § 13-8-2(b) does not apply "when the terms of the contract at issue unequivocally express the intent of the parties to shift the risk of loss and look solely to an insurance policy obtained in order to cover loss or damages incurred by *both* parties") (emphasis in original).

The Agreement does not "unequivocally" shift the risk of loss incurred by *both* parties to an insurer.   The USIC insurance policy during the relevant time period names USIC as the "named insured" and Nicor as the "additional insured."   FOF ¶¶ 35-36.   The policy goes on to explain that an additional insured entity is covered "only with respect to liability for [covered types of damage] caused in whole or in part, by: 1. Your acts or omissions; or 2. The acts or omissions of those acting on your behalf."   Id.   Additionally, the policy explicitly limits the definition of "you" and "your" to refer to USIC only: "Throughout this policy, the words 'you' and 'your' refer to the Named Insured shown in the Declarations."   Id.   Taking these provisions together, Nicor's status as an "additional insured" covers it only to the

extent that it is deemed liable on the basis of USIC's own acts or omissions, not those of Nicor.  Cf. Emp'rs Mut. Cas. Co. v. Shivam Trading, Inc., No. 5:16-CV-58, 2017 WL 2126911, at *2–3 (S.D. Ga. May 16, 2017) (ruling that insurance policy could not be interpreted to cover actions of additional insured where policy defined "you" and "your" to cover only named insured and stated that additional insured was covered only for "your acts or omissions or the acts or omissions of those acting on your behalf ").

Furthermore, as in Federated Dep't Stores, the Agreement provided that USIC's insurance must be with companies "satisfactory" to Nicor.  FOF ¶¶ 34, 39.  Given that Nicor never objected to USIC's insurance and allowed USIC to proceed under the Agreement, the Court infers that Nicor approved the insurance policy at issue.  See Federated Dep't Stores, 264 Ga. App. at 862 ("We infer from the record that such act [of procuring satisfactory insurance] occurred and that the  purchased insurance  was  satisfactory  to  Federated  since  Superior was permitted to 'commenc[e] the Work.'").  And finally, because USIC's insurance policy contains a very large, self-insured retention of $2 million, USIC's potential out-of-pocket liability under the policy is actually larger than Nicor's total  coverage  as  an additional insured.  FOF ¶¶ 37–38.  The Court finds no evidence that USIC intended to become,  in  effect,  an  insurer  for  $2 million of liability based on Nicor's sole negligence.  Given that USIC receives only a relatively small sum per

locate, it is not even plausible that USIC would agree to provide such blanket coverage.

Thus, Nicor has failed to show that the insurance provision of the Agreement somehow expressed a clear, "unequivocal[ ]" intent to shift *all* risk of loss by *both* parties to an insurer.  Because the "insurance exception" does not apply and both threshold conditions outlined by <u>Kennedy Dev. Co.</u> are met here, Paragraph 9.1 is unenforceable and void as against public policy.

Having determined that the Agreement's Paragraph 9.1 is void, the Court does not need to address Nicor's Motion for Partial Summary Judgment, which seeks a determination that USIC owes a duty to defend Nicor in the underlying cases immediately, without regard to the outcome of those suits.

## III.   Conclusion

Accordingly, for good cause shown:

IT IS HEREBY ORDERED AND ADJUDGED:

1)  USIC's Motion for Summary Judgment [Doc. No. 35] is hereby **GRANTED**.

2)  Nicor's Motion for Partial Summary Judgment [Doc. No. 38] is hereby **DENIED as moot.**

3)  Nicor's Motion for Hearing [Doc. No. 39] is hereby **GRANTED** nunc pro tunc.

4)  Nicor's Motion for Leave to Supplement the Record for Summary Judgment with Newly Discovered Evidence [Doc. No. 46] is hereby

**GRANTED**.

5) USIC's Motion for Leave to File Surreply [Doc. No. 53] is hereby **GRANTED**.

6) USIC, LLC's Motion to Certify Closure of Case and Finality of Order Granting Summary Judgment [Doc. No. 68] is **DENIED**, as the instant Opinion and Order makes the Court's ruling in this case final, not the oral ruling announced at the hearing.

7) Plaintiff's Request for Oral Argument or, in the Alternative, Motion for Leave to File Sur-Reply [Doc. No. 72] is **DENIED**.

The Court **DIRECTS** the Clerk to mark this case closed.

SO ORDERED this 2nd day of September, 2021.

_s/ CLARENCE COOPER_
CLARENCE COOPER
SENIOR UNITED STATES DISTRICT JUDGE